IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIMMY LEE BROWN, ) | |
|         Plaintiff ) | C.A. No. 21-123 Erie |
| v. ) | |
| ) | District Judge Susan Paradise Baxter |
| SAINT VINCENT HEALTH CENTER, ) | |
| et al., ) | |
|         Defendants. ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

   **A.   Relevant Procedural History**

Plaintiff Jimmy Lee Brown brings this *pro se* action against Defendants Saint Vincent Health Center ("SVHC"), and SVHC employees Paul Matters ("Matters") and Travis Phelps ("Phelps"), alleging that Defendants violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12133, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). In addition, Plaintiff alleges a claim of retaliation under Title VII, the ADA, and/or the ADEA, as well as an apparent claim of hostile work environment.

Defendants SVHC and Matters have filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. [ECF No. 11].[1] Plaintiff has filed a two-page "request to deny Defendants' motion to dismiss" [ECF No. 15], to which Defendants' filed a reply [ECF No. 17], and Plaintiff subsequently filed a two-page "opposition to

---

[1] Defendant Phelps is represented by separate counsel in this matter and has claimed that he has never been properly served with the complaint [ECF No. 9]. So, Plaintiff's claims against Defendant Phelps will not be addressed

1

Defendant's motion to dismiss" [ECF No. 18]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff's allegations are sparse and somewhat incoherent, spanning only two paragraphs of the complaint. In paragraph 11, Plaintiff alleges that Defendant SVHC violated his rights under Title VII "by segregating a class of African American Men and one Caucasian male into dirty trash removal jobs and lower paying jobs at its Erie, Pa location," and by failing to "offer African American Males promotions or advancement opportunities in maintenance, management and lead supervisor jobs, despite their tenure and outstanding knowledge in Supervisor rolls [sic] (myself) and outstanding job performance, and paid many Caucasian workers higher wages and promoting them." (ECF No. 1, at ¶ 11). Also contained within this paragraph is the incomplete and unintelligible statement that "Saint Vincent allowed women of Caucasian decent [sic] and male and of women of Nepal decent [sic]." (ECF No. 1, at ¶ 11).

In paragraph 12 of the complaint, Plaintiff alleges that Defendant Phelps retaliated against him "for complaining to HR numerous times about Mr. Phelps using all staff against [Plaintiff]." In particular, Plaintiff alleges that, on 8/19/2020, Defendant Phelps had Defendant Matters explain to Plaintiff "in a not so nice demeanor" that the next time Plaintiff turned in his badge to get repaired he "won't have a place to park," and, on 1/22/2020, Defendant Phelps allegedly sent a co-worker "to try and fight [Plaintiff] whom got in [Plaintiff's] face and spit on [him]." Plaintiff alleges further that "no other co-workers are allowed to talk to [him]" and that he is "constantly given unreasonable work assignments." (Id. at ¶ 12).

herein.

**II.    DISCUSSION**

    **A.**    **Discrimination Claims v. Defendant Matters**

Defendants move to dismiss Plaintiff's discrimination claims against Defendant Matters, arguing that individual liability does not exist under Title VII, the ADA, and the ADEA. The Court agrees. See N'Jai v. Floyd, 2009 WL 4823839, at *9 (W.D. Pa. Dec. 9, 2009), aff'd 386 Fed. Appx. 141 (3d Cir. 2010) (dismissing discrimination claims against individual employees because individual liability found not to exist under Title VII, the ADA, and the ADEA); Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 184 (3d Cir. 1997) (holding that Title VII does not permit individual employee liability); Koslow v. Commonwealth of Pennsylvania, 30 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA"); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n. 29 (3d Cir. 2006) (noting that the ADEA does not provide for individual liability) (collecting cases holding the same). Based on the foregoing, therefore, Plaintiff's discrimination claims against Defendant Matters are not cognizable and will be dismissed with prejudice.

    **B.**    **Title VII Claims v. Defendant SVHC**

In his complaint, Plaintiff checked boxes indicating that he is alleging Title VII claims of discrimination based on race, national origin, color, and gender. Defendants have moved to dismiss these claims, raising two arguments: (i) Plaintiff failed to exhaust his administrative remedies with regard to his gender discrimination claim, and his claims of discrimination based on race, national origin, and/or color, to the extent such claims are based on disparate impact; and (ii) Plaintiff has failed to state a cognizable claim of discrimination based on race, national origin, and/or color, to the extent he alleges disparate treatment.

### 1. Failure to Exhaust Administrative Remedies

Under Title VII, a claimant must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC, or equivalent state administrative agency, before filing suit in federal court. See Barzanty v. Verizon PA, Inc., 361 Fed. Appx. 411, 413 (3d Cir. 2010) (citing Title VII, 42 U.S.C. §§ 2000e-5b, €(1), (f)(1)). Failure to exhaust administrative remedies is akin to a failure to comply with a statute of limitations. Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir.1997). Administrative remedies are designed to ensure that an agency gets the first opportunity to resolve a discrimination charge, while leaving the claimant with a federal court remedy if the agency sits on the claim or ultimately denies relief.

To determine whether a plaintiff has exhausted his administrative remedies, the court must decide "'whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom.'" Kopko v. Lehigh Valley Health Network, 776 Fed. Appx. 768, 773 (3d Cir. 2019), quoting Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). The Third Circuit has held that "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Webb v. City of Phila., 562 F.3d 256, 263 (3d Cir.2009), quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976). "The legal analysis turns on whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." Kopko, 776 Fed. Appx. at 773, citing Hicks v. ABT Assocs., Inc., 572 F.2d 960, 967 (3d Cir. 1978) (suggesting that the analysis asks whether there is a "close nexus between the facts" in the administrative charge and those in the judicial complaint).

### a. Gender Discrimination Claims

Initially, the Court notes that it is highly questionable whether Plaintiff has even alleged a cognizable gender discrimination claim here, as the only allegation that may be construed as raising an issue of gender is the incomplete and largely incoherent statement that "Saint Vincent allowed women of Caucasian decent [sic] and male and of women of Nepal decent [sic]." (ECF No. 1, at ¶ 11). Nonetheless, it is clear that Plaintiff's EEOC charge does not contain any allegations of gender discrimination or harassment. In fact, there are no references to gender found anywhere within the body of the charge. (See ECF No. 11-1). Thus, any claim of gender discrimination that may be gleaned from the complaint is not "reasonably related to those in the administrative charge" and will be dismissed for Plaintiff's failure to exhaust his administrative remedies.

### b. "Disparate Impact" Claims

Defendants' argument that Plaintiff failed to exhaust his administrative remedies regarding his Title VII race, color, and national origin discrimination claims is based on the faulty premise that Plaintiff's allegations "could only plausibly be construed as alleging disparate impact against African American men." (ECF No. 12, at p. 8). By definition, "disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Raytheon v. Hernandez, 540 U.S. 44, 52 (2003), quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). "Under a disparate-impact theory of discrimination, a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." Id. at 52-53 (internal quotation omitted). Thus, a

disparate impact claim is often founded upon the unintentional discriminatory consequences of an employers' actions. This is not what Plaintiff has alleged here.

Plaintiff's allegations plainly challenge Defendant SVHC's intentional practices of "segregating a class of African American Men and one Caucasian male into dirty trash removal jobs and lower paying jobs at its Erie, Pa location," and failing to "offer African American Males promotions or advancement opportunities in maintenance, management and lead supervisor jobs, despite their tenure and outstanding knowledge in Supervisor rolls [sic] (myself) and outstanding job performance, and pa[ying] many Caucasian workers higher wages and promoting them." (ECF No. 1, at ¶ 11). Thus, Plaintiff is complaining of Defendant SVHC's discriminatory treatment of African American men, including himself, in comparison to their Caucasian counterparts. This is a disparate treatment claim, rather than one based upon disparate impact.    Furthermore, though Plaintiff's complaint allegations more broadly claim discriminatory treatment of African-Americans, as a whole, they are reasonably related to those contained in his EEOC charge, which more narrowly claim discriminatory treatment of himself, individually. In particular, in his EEOC charge, Plaintiff claims, in part, that he was "denied a raise in pay, [and] denied promotion to lead or supervisor positions in favor of Russian and Nepali employees…." These allegations are sufficiently similar to the allegations of Plaintiff's complaint to conclude that they were properly exhausted at the administrative level. Thus, Defendants' motion to dismiss Plaintiff's Title VII claims of discrimination based on race, color, and national origin, for failure to exhaust administrative remedies, will be denied.

### 2. Sufficiency of Title VII Disparate Treatment Claims

Title VII claims of disparate treatment are examined according to the burden-shifting framework that was established by the United States Supreme Court in <u>McDonnell Douglas</u>

Corp. v. Green, 411 U.S. 792 (1973). Within this framework, Plaintiff must first set forth a *prima facie* case of discrimination by alleging the following four elements: (i) he is a member of a protected class; (ii) he was qualified for the position in question; (iii) he suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008), citing McDonnell Douglas, 411 U.S. at 802. Defendants assert that Plaintiff has failed to adequately set forth any of the four elements.

Initially, Defendants note that Plaintiff "does not state whether he is African American or identifies with any other race, color, or national origin." (ECF No. 12, at p. 14). While it is true that Plaintiff fails to specifically identify his race, color, and national origin in his complaint, it is certainly apparent from Plaintiff's allegations that he associates with the African American race, and even implies that he is among the African Americans employed by Defendant SVHC who has "tenure and outstanding knowledge in Supervisor rolls [sic]" (parenthetically noting "myself"). (ECF No. 1, at ¶ 11). Moreover, Defendants have submitted a copy of Plaintiff's EEOC charge, which explicitly states that he is "black" and his national origin is "American." (ECF No. 11-1, at p. 2). Thus, it is sufficiently apparent from the documents in this case that Plaintiff has identified himself as an African American.

That being said, the Court agrees that Plaintiff's remaining allegations fail to satisfy the other three elements with sufficient clarity. As Defendants note, Plaintiff does not identify either his position with SVHC or his qualification for the same. More importantly, he fails to set forth allegations demonstrating that he personally suffered an adverse employment action. Instead, he generally alleges that African American men, as a whole, have been denied "promotions or advancement opportunities" and have received lower wages in comparison to

their Caucasian counterparts. Nonetheless, recognizing that Plaintiff is proceeding *pro se*, the Court finds Plaintiff's allegations descriptive enough to allow him the opportunity to amend his complaint to restate his claim in more detail, specifically addressing the four elements of a *prima facie* claim of discrimination as set forth above.

### C. ADA Claim v. Defendant SVHC

To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must demonstrate that: (i) he is "disabled" as defined by the ADA; (ii) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (iii) he has suffered an adverse employment decision as a result of discrimination. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). Here, Defendants argue that Plaintiff has failed to plead any facts supporting that he is disabled with the meaning of the ADA or that he was subject to an adverse employment action as a result of any such disability. The Court agrees. Indeed, aside from the checked box next to "disability" under the statement, "I believe that I was discriminated against because of my…" (ECF No. 1, at ¶ 9f), the body of the complaint contains no allegations whatsoever regarding either the nature or extent of any alleged disability, or any actions allegedly taken by Defendant SVHC to discriminate against Plaintiff on the basis of disability. In fact, the word "disability" is not even mentioned. Thus, Plaintiff's claim under the ADA will be dismissed.

### D. ADEA Claim v. Defendant SVHC

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show: (1) he is at least 40 years old; (2) he suffered an adverse employment decision; (3) he was qualified for his position; and (4) he was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. Willis v. UPMC

Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citations omitted). Here, as with his purported ADA claim, Plaintiff has made no allegations to support his age discrimination claim under the ADEA, other than the inclusion of his birth year (ECF No. 1, at ¶ 9(g)). The body of the complaint is wholly devoid of any allegations alluding to any employment actions allegedly taken by Defendant SVHC on the basis of age. As a result, Plaintiff's claim of age discrimination under the ADEA will be dismissed.

### E.    Retaliation Claim Under Title VII, the ADA, and/or the ADEA

In order to establish a claim for retaliation under Title VII, the ADA, and/or the ADEA,[2] the plaintiff must demonstrate: "(1) he was engaged in protected activities; (2) the employer took an adverse employment action after or at the same time as the employee's protected activity; and (3) a causal link exists between the protected activity and the adverse action." Mitchell v. MG Indus., Inc., 2011 WL 4549411, at *10 (E.D. Pa. Sept. 30, 2021), citing Glanzman v. Metro. Mgmt. Co., 391 F.3d 506, 515–16 (3d Cir.2004). Defendants have moved to dismiss this claim based on Plaintiffs' failure to allege that he was engaged in protected activity.

An employee engages in protected activity under Title VII, the ADA, and/or the ADEA when he opposes unlawful discrimination under the statute(s) or participates in another's proceeding alleging unlawful discrimination. See Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006). In other words, to qualify as a protected activity, an employee must claim that a protected characteristic was the basis for the conduct being challenged. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006), citing Barber v.

---

[2] The anti-retaliation provisions of Title VII, the ADA, and he ADEA are nearly identical, prompting the Third Circuit to observe that "precedent interpreting any one of these statutes is equally relevant to interpretation of the others." Fogleman v. Mercy Hosp., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted).

CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995) ("A general complaint of unfair treatment is insufficient to establish protected activity"); Martonik v. Donahoe, 2013 WL 5875530, at *11 (W.D. Pa. Sept. 19, 2013) (holding that a general claim of harassment did not constitute protected activity where employee did not state that he was being harassed based on any protected characteristic).

Here, Plaintiff's sole allegation regarding his alleged protected activity is that "he complain[ed] to HR numerous of times about [Defendant] Phelps using all staff against me." (ECF No. 1, at ¶ 12). For additional context, Plaintiff has attached to his opposition copies of two printouts of internal reports that were filed by Plaintiff through SVHC's internal HR system (ECF Nos 15-2 and 15-3). These reports contain the crux of the HR complaints referred to in Plaintiff's complaint. The first of these reports complains, in pertinent part, as follows:

> Over the months I have been complaining about the professionalism by Mr. Phelps on how he has handle[d] certain matters of harassment's [sic] I have been receiving from other employees that I told him on 2/19/2020 that I was receiving. Just 2 to 3 months ago he wrote me up for altercation that I did not start but avoided with Edward. I feel I am a target and want to address these issues before Travis try a slick way to get me terminated....

[ECF No. 15-2]. The second report simply recounts Plaintiff's encounter with Defendant Matters regarding Plaintiff's parking badge, without any indication that the encounter was precipitated by any protected activity engaged in by Plaintiff [ECF No. 15-3].

It is apparent that neither the allegations of the complaint, nor the contents of the underlying reports, claim that Plaintiff was harassed based upon any protected characteristic (i.e., race, color, national origin, age, gender, or disability). Instead, Plaintiff has merely alleged that he complained of unfair treatment and generalized harassment, which is insufficient to establish protected activity. See Kier v. F. Lackland & Sons, LLC, 72 F.Supp.3d 597, 616 (E.D.

10

Pa. 2014) ("The Third Circuit has been clear that an employee has not engaged in protected activity when he or she complains about unfair treatment but stops short of referencing a protected characteristic as the basis for the unfair treatment"). Plaintiff's failure in this regard warrants dismissal of his retaliation claim. See Young v. School Dist. of Philadelphia, 427 Fed. Appx. 150, 155 (3d Cir. 2011) (affirming dismissal of retaliation claim, finding that generalized complaint about improperly coded absences did not constitute protected activity); Seldon v AMTRAK, 452 F.Supp.2d 604, 610 (E.D. Pa. 2006) (dismissing claim of retaliation based on generalized complaints of not being selected for program and preferred shift were not protected activity); Hundley v. Wawa, Inc., 2021 WL 2555440, at *8 (E.D. Pa. June 22, 2021) (dismissing retaliation claim, finding that employee's complaint of unfair treatment without reference to a protected characteristic did not constitute protected activity); Robuck v. Mine Safety Appliances Co., 2010 WL 4553562, at *5 (W.D. Pa. Nov. 3, 2010) (dismissing Title VII and ADA retaliation claims, with prejudice, finding that male employee's ongoing complaints to supervisor regarding female employee's preferential treatment and the times needed to take walks due to his disability did not constitute protected activity).

**F.     Hostile Work Environment Claim**

Though far from clear, Plaintiff appears to be claiming that he was subject to a hostile work environment under Title VII, the ADA, and/or the ADEA. To adequately plead a hostile work environment, Plaintiff must allege sufficient facts that "show that his workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Culler v. Sec'y of U.S. Veteran Affairs, 507 Fed. Appx. 246, 249 (3d Cir. 2012), quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). To do so,

Plaintiff's allegations must make clear that he experienced harassment "'because of' [his] protected status or activity." Culler, 507 Fed. Appx. at 249, quoting Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007).

Here, as already discussed above, Plaintiff has failed to make any allegations linking any alleged harassment to his claimed protected status. He simply makes generalized statements that: Defendant Phelps used all staff against him; a co-worker tried to fight him and spit on him; his co-workers were not allowed to talk to him; and he was given unreasonable work assignments. (ECF No. 1, at ¶12). These allegations are insufficient to state a cognizable claim of hostile work environment, and such claim will be dismissed, accordingly. See Jennings-Fowler v. City of Scranton, 680 Fed. Appx. 112, 118 (3d Cir. 2017) (affirming dismissal of hostile work environment claim where plaintiff made generalized allegations that she was subject to public disparagement, her supervisor slammed photos on her desk, and she faced more heightened work scrutiny than her male counterparts); Culler, 507 Fed. Appx. at 250 (affirming dismissal of hostile work environment claims where employee alleged that he was subjected to "unlawful age-related discussions," a workplace conflict over facility closure, and a demotion); Laneve v. Latrobe Steel Co., 2015 WL 4911824, at *7 (W.D. Pa. Aug. 17, 2015) (dismissing age-based hostile work environment claim because plaintiff failed to plausibly allege he was subject to any age-related harassment).

An appropriate Order follows.